UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BRIAN KEITH HARVEY,

      Petitioner,

                                    Case No. 1:04-cv-35

v

                                    Hon. Wendell A. Miles

CURT JONES, Warden,

      Respondent.

_____/


**OPINION AND ORDER**


      This matter is before the court on a *pro se* petition by Michigan prisoner Brian Keith

Harvey for a writ of habeas corpus under 28 U.S.C. § 2254.[1]   The petitioner challenges his

conviction and sentence on charges of possession with intent to distribute cocaine, fleeing and

eluding a police officer, and resisting and obstructing a police officer.  Respondent has filed an

answer addressing the merits of the petition and petitioner has also filed various briefs.  After

reviewing the briefs and underlying record, the court concludes that petitioner is not entitled to

habeas relief.

---

      [1]When petitioner filed his habeas petition, he was incarcerated at Michigan's Carson City
Correctional Facility, where, he alleged, Curt Jones was his warden. However, petitioner
currently is confined at Ojibway Correctional Facility.

# I

## Procedural History

Petitioner filed his habeas petition on January 16, 2004.  Upon initial review, the court dismissed the petition as time-barred, insofar as the petition did not allege that petitioner had filed an appeal from the denial of a motion for post-conviction relief by the state trial court. Petitioner appealed the dismissal to the United States Court of Appeals for the Sixth Circuit, claiming that he had in fact appealed the trial court's denial of his motion for post-conviction relief.  The state agreed that petitioner had filed such an appeal, which operated to toll the time for filing the federal habeas petition.  The Sixth Circuit therefore issued a decision remanding the case to this court for further proceedings.

# II

## Background

On October 23, 1997, petitioner was observed by uniformed Grand Rapids, Michigan police officers driving in excess of the speed limit on Madison Avenue in Grand Rapids.  The police initiated a traffic stop and made contact with petitioner.  After realizing that there was an outstanding misdemeanor warrant for petitioner's arrest on unrelated charges, one of the officers ordered petitioner to step out of his vehicle.  Petitioner instead put his car into gear and fled the scene.  After a police chase involving multiple police vehicles, petitioner was apprehended a short distance away from where he had initially been stopped.

During petitioner's flight, he was observed throwing something out of his vehicle.  After his apprehension, a plastic bag containing cocaine was found in the street along the path of

petitioner's flight.  Petitioner was charged in Michigan's Kent County Circuit Court with possession with intent to deliver less than fifty grams of cocaine, fleeing and eluding a police officer, and resisting and obstructing a police officer.

The prosecution's theory of the case was that petitioner, who knew he was about to be arrested on an outstanding misdemeanor warrant, decided to flee and dispose of the cocaine during his flight so that it would not be found during a search incident to his arrest.  Petitioner's jury trial on the charges was conducted before a visiting judge, Judge Charles Simon. Petitioner's sole defense to the cocaine possession charge was essentially that the cocaine found in the street had been planted by police.  In contrast, petitioner appears to have had no real defense to the remaining two charges.  At the conclusion of the trial, during which petitioner neither testified nor presented any witnesses, he was convicted on all three charges.  He was sentenced by Kent County Circuit Court Judge Paul Sullivan to 10-to-40 years imprisonment on the drug possession charge, one-to-10 years imprisonment on the fleeing and eluding charge, and one-to-four years imprisonment on the resisting and obstructing charge.   The latter two sentences were to run concurrently to one another and consecutive to the sentence on the drug possession charge.

At the time of petitioner's arrest, he had been under surveillance by undercover Grand Rapids police officers as part of a narcotics investigation.  At trial, one of the officers involved in the investigation, Josh Cornell, testified that petitioner had been the focus of the investigation, which was planned to conclude on the day of petitioner's arrest.  Cornell also testified that he had been the one responsible for obtaining the misdemeanor warrant for petitioner's arrest, which was outstanding as of the time of petitioner's apprehension.  The misdemeanor warrant,

3

which was issued on October 14, 1997, was for violating a noise ordinance by operating a motor vehicle with an excessively loud sound system.

Shortly after his arrest, petitioner was placed, handcuffed, in the rear seat of a police cruiser. While the cruiser was parked in the parking lot of the Grand Rapids police department, petitioner was read his rights, and made a statement admitting that he had possessed one-half ounce of cocaine, which he had thrown onto the road. Petitioner later recanted the statement and asked for an attorney, at which point the interview was concluded. An investigative interview form prepared by police and containing notes of the interview listed the time of the interview as 12:55 p.m., but did not indicate whether this time reflected the beginning or end of the interview. Petition, Appendix A.[2] However, a note was added to the conclusion of the form stating that petitioner had "wanted to talk again" at 1:05 p.m., at which time he recanted his statement. Id.

Virtually immediately after plaintiff was interviewed, Cornell obtained a warrant authorizing the search of at least one residence where petitioner had been observed to associate during the narcotics investigation. The warrant had been prepared, though not yet signed by a judge, before plaintiff's arrest. Police were prepared and waiting to execute the warrant promptly upon its approval by a judge, which was sought immediately upon plaintiff's arrest. Materials seized during the execution of the search warrant resulted in the filing of additional drug and weapons charges against both petitioner and an associate, Sharrhae Johnson. These additional charges included a charge of operating a drug house and possession of a firearm by a convicted felon. Petitioner was apparently never tried on these additional charges, presumably

---

[2]A "Constitutional Rights" warning card, which petitioner refused to sign, also listed the time as 12:55 p.m. Petition, Appendix G.

because he was convicted of and sentenced on the charges currently at issue.  Property receipts for items seized during these searches list the time as 1:00 p.m.  Petition, Appendices C and E. The additional charges were assigned a different case number than those for which petitioner was convicted.  Compare Transcript of Proceedings, January 30, 1998 (docket no. 38) (listing case nos. 97-12527-FH, 97-12531-FH, and 97-12535-FH) with Transcript of Jury Trial, January 14, 1999, Vol. I (docket no. 40) (listing case no. 97-12527-FH).   These additional charges are not placed at issue by the petition, although (as will be discussed below) petitioner makes certain arguments involving evidence related to those charges in connection with his current claims.

Petitioner appealed the convictions and sentences at issue in the petition to the Michigan Court of Appeals (docket no. 44).  In his brief on appeal, filed through the state appellate defender, petitioner raised the following claims:

> I.     THE TRIAL JUDGE ABUSED HIS DISCRETION BY DENYING MR. HARVEY'S OBJECTION TO THE ADMISSION OF TESTIMONY REGARDING EXTRA-JUDICIAL STATEMENTS ALLEGEDLY MADE BY MR. HARVEY
>
> II.    MR. HARVEY'S FEDERAL AND STATE DUE PROCESS RIGHTS WERE VIOLATED WHEN THE PROSECUTOR PRESENTED FALSE TESTIMONY AT HIS TRIAL
>
> III.   MR. HARVEY WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE ASSISTANCE OF COUNSEL BECAUSE HE DID NOT RECEIVE THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL
>
> > A.     Counsel made a false representation in his opening statement
> >
> > B.     Counsel failed to impeach a witness he said he would impeach
> >
> > C.     Counsel failed to impeach a key witness with prior consistent statements and other evidence

5

        D.      Counsel failed to conduct the pre-trial *Walker* Hearing prior counsel had requested

        E.      Counsel failed to object to an improper and coercive jury instruction

        F.      Defense counsel introduced damaging evidence about a prior drug-related conviction

        G.      Defense counsel failed to challenge the arrest warrant

IV.    MR. HARVEY'S CONVICTION OF POSSESSION WITH INTENT TO DELIVER COCAINE MUST BE VACATED BECAUSE THE TRIAL JUDGE IMPROPERLY INSTRUCTED THE JURY THAT IT COULD NOT CONSIDER THE LESSER INCLUDED OFFENSE OF POSSESSION OF COCAINE UNLESS IT FOUND THAT HE WAS NOT GUILTY OF THE CHARGED OFFENSE

V.     RESENTENCING IS REQUIRED BECAUSE MR. HARVEY WAS NOT SENTENCED BY THE JUDGE WHO PRESIDED AT HIS TRIAL

VI.    RESENTENCING IS REQUIRED BECAUSE THE SENTENCE IMPOSED WAS BASED ON INACCURATE INFORMATION AND WAS EXCESSIVE AND DISPROPORTIONATE

In a supplemental *pro se* brief which he was granted leave to file in his direct appeal, petitioner also argued that the charges against him should have been dismissed because the "chief investigating police officer" involved in the case had "engaged in a pattern of inexcusable neglect or deliberate deception about 'crucial evidence,' the conduct of the investigation & testimony at [the] trial."

The Michigan Court of Appeals affirmed petitioner's conviction. People v. Harvey, No. 219250, 2000 WL 33415218 (Mich. Ct. App. Aug. 1, 2000). With respect to petitioner's sentence, although the court found the sentence on the possession charge was neither based on

6

inaccurate information nor disproportionate, the court agreed with petitioner that he was entitled

to be sentenced by the judge who presided at his jury trial, provided that judge was reasonably

available.  The court therefore remanded the case to the trial court with the direction that

petitioner be resentenced by Judge Simon, "if he was reasonably available."  The court further

held that "if Judge Simon is not reasonably available, then [the] sentences are affirmed."  2000

WL 33415218 at *3.

　　　After the Michigan Court of Appeals remanded the case, but before petitioner had sought

further review, the trial court, acting on remand, issued an Opinion and Order declining to

resentence petitioner.  According to Judge Sullivan, who issued the decision, he had inquired of

the court administrator and determined that Judge Simon, who had presided over petitioner's

trial, was working in Oakland County and that there were no plans to bring him into Kent

County.  Consistent with the Michigan Court of Appeals' decision, Judge Sullivan therefore

determined that Judge Simon was "not reasonably available" and that the sentence which Judge

Sullivan himself had previously imposed was deemed affirmed.  People v. Harvey, No. 97-

012527-FH, Opinion & Order (Kent Co. Cir. Ct.     Sept. 11, 2000).

　　　Petitioner then filed a delayed application for leave to appeal in the Michigan Supreme

Court (docket no. 45).  His application, filed once again through the state appellate defender's

office, raised the same claims which had been raised in the Michigan Court of Appeals, with the

exception of Issue V, with respect to the sentencing judge.[3]  Petitioner once again also filed a

---

[3]Petitioner's Issue V in his delayed application for leave to appeal filed in the Michigan
Supreme Court read as follows:

　　　THE COURT OF APPEALS CORRECTLY HELD THAT RESENTENCING IS
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(continued...)

*pro se* application, consisting of lengthy and rambling arguments that the prosecution and police had engaged in misconduct and his trial counsel had failed to explore evidence which would have demonstrated this.  The Michigan Supreme Court denied petitioner's application, stating that it was "not persuaded that the questions presented should be reviewed by this Court." People v. Harvey, No. 117763, Order (Mich. June 26, 2001).

Petitioner then filed a *pro se* motion for post-conviction relief in the trial court under M.C.R. 6.500 (docket no. 46).  Petitioner's motion, which was – like his *pro se* delayed application filed in the Michigan Supreme Court – lengthy and rambling, was apparently denied by the trial court.[4]  Petitioner filed yet another rambling application for leave to appeal in the Michigan Court of Appeals, together with a "Motion for Immediate Consideration" seeking release on bond.  The Michigan Court of Appeals denied both the bond and the application for leave to appeal, "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." People v. Harvey, No. 246665, Order (Mich. Ct. App. Aug. 13, 2003).  Petitioner then filed a *pro se* application for leave to appeal with the Michigan Supreme Court, which was apparently rejected because petitioner filed it more than 56 days after the Court of Appeals'

_____

[3](...continued)
REQUIRED BECAUSE MR. HARVEY WAS NOT SENTENCED BY THE JUDGE WHO PRESIDED AT HIS TRIAL.  AT THIS TIME, KENT COUNTY STATES THAT JUDGE SIMON IS NOT REASONABLY AVAILABLE.  AT A MINIMUM, MR. HARVEY REQUESTS THAT HE BE ALLOWED TO APPEAR FOR RESENTENCING AGAIN IF JUDGE SIMON BECOMES REASONABLY AVAILABLE IN THE NEAR FUTURE.

[4]Neither party has provided the court with a copy of the trial court's decision on petitioner's Rule 6.500 motion.

decision, making it untimely under Michigan law.[5]

# III

## Standard of Review

Title 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court may be "contrary to" clearly established federal law in two ways: (1) the state court applies a rule of law which is substantially different from that dictated by relevant precedent of the United States Supreme Court, or (2) the state court reaches a result different from that reached by the United States Supreme Court in relevant precedent involving materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  In contrast, an "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  Id. at 409.  "Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because

---

[5]Neither party has provided the court with a copy of the Michigan Supreme Court's denial of petitioner's application for leave to appeal the decision on his Rule 6.500 motion.

that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly."  Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002).  "The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."  Id. at 27.

Federal law also requires considerable deference to findings of fact made by the state courts.  Johnson v. Luoma, 425 F.3d 318, 324 (6th Cir. 2005).  "[S]tate findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence."  Baze v. Parker, 371 F.3d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

## IV

### Discussion of Claims

Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

1.      Petitioner's Due Process rights were violated when the prosecutor presented false testimony and a falsified police document during his trial.

2.      Petitioner's Due Process rights were violated when the trial judge failed to properly rule on a defense objection to the admission of testimony regarding post-arrest statements made by petitioner.

3.      Petitioner's Sixth Amendment rights were violated by the ineffective performance of his trial counsel.

4.      Petitioner's Sixth Amendment rights were violated when he was

not sentenced by the judge who presided over his trial.[6]


A. **Prosecutorial Misconduct**

In his first habeas claim, petitioner contends that his due process rights were violated when the prosecutor presented false evidence against him, including falsified documents and trial witnesses who provided false testimony.   The respondent argues this claim does not provide a basis for granting the petition because the claim is procedurally defaulted as a matter of law.

In Wainwright v. Sykes, 433 U.S. 72 (1977), the Supreme Court made clear that federal habeas relief may be barred on claims that the petitioner has failed to present to the state courts in accordance with the state's procedural rules.  The Supreme Court subsequently clarified this pronouncement once in Harris v. Reed, 489 U.S. 255, 263 (1989) (holding that a procedural default will not preclude habeas review "unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar"), and then again in Coleman v. Thompson, 501 U.S. 722, 735 (1991) (holding that habeas review may be had only if the state court did not clearly and expressly rely on adequate and independent state grounds and if the state opinion "fairly appeared to rest primarily on resolution of [petitioner's federal] claims, or to be interwoven with those claims.").

This court begins its analysis of whether petitioner's prosecutorial misconduct claim is procedurally defaulted by looking to the last reasoned state court judgment denying petitioner's

---

[6]Petitioner's form petition lists only three grounds for relief and does not expressly refer to any sentencing issues.  Petition at 7.   However, the brief which he has attached to his petition lists four grounds and identifies the sentencing issue as "Ground IV."

claim.   See Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991) (beginning analysis by asking which is "the last *explained* state-court judgment" on the claim) (emphasis in original); see also id. at 803 ("[W]here ... the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."). Here, the last state court to address this claim, the Michigan Court of Appeals, held that because petitioner did not object to the prosecutor's conduct at trial, review of the claim was "foreclosed unless the prejudicial effect of the prosecutor's conduct could not have been cured by an appropriate instruction or where failure to review the issue will result in a miscarriage of justice." People v. Harvey, No. 219250, 2000 WL 33415218, *1 (Mich. Ct. App. Aug. 1, 2000).  That court therefore reviewed the claim only for plain error.  See People v. Carines, 460 Mich. 750, 761-765 (1999) (discussing plain error doctrine's application to unpreserved claims of constitutional error).

The Sixth Circuit has observed that the failure to object rule is regularly followed by Michigan courts in the context of prosecutorial misconduct claims.  See Simpson v. Jones, 238 F.3d 399, 409 (6th Cir. 2000) ("This court, in rejecting a claim of prosecutorial misconduct, has ruled that the failure to object rule is regularly followed in Michigan").  Accordingly, the state court's last explained judgment clearly rested on a procedural bar and the doctrine of procedural default is properly invoked, even though the Michigan Court of Appeals addressed the merits of petitioner's allegations on a plain error review.  Id. at 408; see also McBee v. Abramajtys, 929 F.2d 264, 267 (6th Cir.1991) ("a federal court need not reach the merits of a habeas petition where the last state-court opinion clearly and expressly rested upon procedural default *as an alternative ground*") (emphasis in original); Paprocki v. Foltz, 869 F.2d 281, 284-285 (6th Cir.

1989) (enforcement of procedural bar combined with allusion to merits by state court of appeals did not excuse procedural bar).  Therefore, this court may not review petitioner's claim based on prosecutorial misconduct unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider this claim will result in a fundamental miscarriage of justice.  <u>Coleman</u>, 501 U.S. at 749-750.

"Attorney error that constitutes ineffective assistance of counsel is cause[.]" <u>Id</u>. at 754. Therefore, although petitioner could establish ineffective assistance of counsel as cause for his procedural default on the claim of prosecutorial misconduct, petitioner never properly raised a claim of ineffective assistance of counsel in the state courts on this issue.  In his direct appeal, although petitioner raised seven specific detailed allegations of ineffective assistance of counsel, none of these allegations pertained to his trial counsel's failure to object to the alleged prosecutorial misconduct at issue here.  In addition, although petitioner filed his own supplemental brief on direct appeal, that brief did not raise a claim of ineffective assistance of counsel with respect to prosecutorial misconduct.

However, even assuming that petitioner's trial counsel erred in failing to object to the alleged instances of prosecutorial misconduct, petitioner cannot establish prejudice resulting from these alleged errors because his prosecutorial misconduct claim is not meritorious.  "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor.'"  <u>Serra v. Michigan Dept. of Corrections</u>, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982)).  "On habeas review, [the court's] role  is to determine whether the conduct was 'so

13

egregious as to render the entire trial fundamentally unfair.'" Serra, 4 F.3d at 1355 (quoting Cook v. Bordenkircher, 602 F.2d 117, 119 (6th Cir. 1979)).

Here, petitioner claims that he is entitled to habeas relief because the prosecutor knowingly used false testimony and evidence – a so-called *Giglio* violation. See Giglio v. United States, 405 U.S. 150, 153 (1972) ("deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice' . . . '[t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears'") (citations omitted).  Petitioner contends that the prosecutor elicited false testimony from police officer Josh Cornell regarding the time plaintiff was interviewed and made inculpatory statements following his arrest.  Petitioner also contends that the prosecutor placed into evidence a "falsified" document, consisting of the investigate interview form which – plaintiff alleges – inaccurately stated the time when the interview began and ended.  Petitioner further contends that the prosecutor also presented the testimony of other police officers which must have been false because there were inconsistencies in their reports regarding where the cocaine that had been thrown out of petitioner's car had been found; because of these inconsistencies, plaintiff argues, one must conclude that the cocaine must have been planted.

"The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Lochmondy, 890 F.2d 817, 822 (6th Cir. 1989) (citing United States v. Bagley, 473 U.S. 667, 678 (1985)).  "In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." Id. (citations omitted).  "The burden is on

14

the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony."  Id.

The testimony of officer Cornell which plaintiff contends must have been false consists of testimony on cross-examination that the interview of plaintiff concluded at approximately 1:05 p.m.  Transcript of Jury Trial, January 14, 1999 (docket no. 40) at 169.  Plaintiff assesses that this testimony must have been false because – among other reasons – Cornell had previously testified during a pre-trial hearing that the interview ended at 12:55 p.m.  Transcript, January 30, 1998 (docket no. 38) at 42.  This particular hearing was held on a motion to suppress the evidence seized pursuant to the search warrant obtained after petitioner's arrest, the execution of which resulted in the additional charges filed against petitioner which are not the subject of the current petition.  Plaintiff surmises that Cornell must have been lying at trial, and that the notation of the time of the interview written on the investigative interview form – which plaintiff alleges was placed into evidence by the prosecutor at trial – must have been false.[7]  However, at worst, what the evidence suggests is that the police notations of times might have been erroneous, though not deliberately false.

The same holds true for any inconsistencies in the evidence regarding the precise location in the street where the cocaine was found.  Simple mistakes alone do not amount to perjury, and there has been no showing here that any inconsistencies in the evidence were the product of deliberate falsehood rather than mere innocent mistakes.   Petitioner's claim that the prosecutor presented perjured or false testimony or other deliberately false evidence lacks merit, and

---

[7]Plaintiff also surmises that there must have been two different interview forms containing two different notations of the time he was interviewed.  The record does not support this conclusion.

therefore failure to consider this procedurally defaulted claim does not result in a fundamental miscarriage of justice.

**B.  Petitioner's Statements to Police**

Petitioner also claims that his Fifth Amendment right against self-incrimination and his right to due process were violated because certain incriminating statements he made to police while in custody were not preceded by *Miranda* warnings, and/or the statements were made involuntarily.

Under federal law, a confession obtained during custodial interrogation may be deemed to unconstitutional on at least two grounds: (1) that the confession was involuntary, see, e.g., Jackson v. Denno, 378 U.S. 368, 376-377 (1964) ("a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession"), and (2) that the detainee was not advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966) (in order to protect against such compulsory self-incrimination, certain warnings must be given before a suspect's statement made during custodial interrogation may be admitted in evidence).[8]  Petitioner argues that he is entitled to habeas relief because certain statements he made after his arrest and used against him at trial were obtained in violation of each of these proscriptions.

_____

[8]Under Miranda, "[s]tatements made by a defendant in response to interrogation while in police custody are not admissible unless the defendant has first been [apprised] of the constitutional right against self-incrimination and has validly waived his right."  United States v. Cole, 315 F.3d 633, 636 (6th Cir. 2003) (citing Miranda, 384 U.S. at 478-79).

16

"In a federal habeas action, the burden of proving that the confession was involuntary rests with the petitioner." Boles v. Foltz, 816 F.2d 1132, 1136 (6th Cir. 1987). "Furthermore, voluntariness need only be proven by a preponderance of the evidence." Id. A confession is considered involuntary if (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne because of the coercive police activity in question. McCall v. Dutton, 863 F.2d 454, 459 (6th Cir.1988) (citations omitted). In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution[.]" Miller v. Fenton, 474 U.S. 104, 112 (1985). Stated another way, the question is "'whether a defendant's will was overborne by the circumstances surrounding the giving of a confession.' " Dickerson v. United States, 530 U.S. 428, 434 (2000) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)). Those circumstances include whether there was police coercion – a "crucial element", the length of interrogation, the location of the interrogation, the continuity of interrogation, the suspect's maturity, his education, his physical condition and mental health, and whether the suspect was advised of his *Miranda* rights. See Withrow v. Williams, 507 U.S. 680, 693-694 (1993).

The Michigan Court of Appeals considered petitioner's arguments in assessing the voluntariness of his confession, concluding that (1) the police officers who testified agreed that petitioner was advised of his *Miranda* before he agreed to make the statements which were used against him, and (2) the testimony on which petitioner relied established that his statements were voluntarily made. "In the due process context, the Supreme Court has explained that

17

voluntariness of a confession is a question of law, reviewed under § 2254(d)(1), and the 'subsidiary factual questions' surrounding the confession are reviewed deferentially under § 2254(d)(2) and § 2254(e)(1)."  Seymour v. Walker  224 F.3d 542, 554 n.3 (6th Cir. 2000) (citing Miller, 474 U.S. at 110-112 and Thompson v. Keohane, 516 U.S. 99, 110-113 (1995) (noting that discerning the "circumstances surrounding the interrogation" and drawing other conclusions that require credibility determinations generally implicate issues of fact, but that the voluntariness of a confession and the waiver of the right to counsel involve questions of law)). Because the question of whether a suspect was properly informed of his *Miranda* rights is a strictly factual one, Bailey v. Hamby, 744 F.2d 24, 26 (6th Cir. 1984), the court therefore applies a presumption of correctness to the Michigan Court of Appeals' determination that petitioner was advised of his *Miranda* rights before he agreed to make the statements which were used against him.  Seymour, 224 F.3d at 553.  The court cannot conclude that the state appellate court's findings – both that petitioner was advised of his rights before he made the statements and that he agreed to make the statements –  were unreasonable.

Although the Michigan Court of Appeals reached the ultimate conclusion that petitioner's statements were "voluntarily" made, it did not separately address petitioner's assertion, made in his brief on appeal, that his statements were not voluntary because – shortly before petitioner made the statements – petitioner's hands had been cuffed behind him, causing him discomfort.  Brief on Appeal (filed as part of docket no. 44) at 17.[9]  In Jackson, the Supreme Court recognized that a criminal defendant has a constitutional right to a "fair hearing

_____

[9]Petitioner was re-cuffed with his hands in front of him, after which he made the inculpatory statements used against him at trial.  Transcript of Jury Trial, January 14, 1999, Vol. I (docket no. 40) at 160-161.

18

and a reliable determination" on the issue of the voluntariness of a confession. 378 U.S. at 376-377. "[A] defendant raising a coerced-confession claim under the Fifth Amendment must first prevail in a voluntariness hearing before his confession and evidence derived from it become inadmissible." Kastigar v. United States, 406 U.S. 441, 462 (1972) (footnote omitted). Failure to raise a contemporaneous objection to admission of a confession, however, ordinarily results in waiver of the right to a voluntariness inquiry. See Wainwright, 433 U.S. at 86 ("the Constitution does not require a voluntariness hearing absent some contemporaneous challenge to the use of the confession"). To comport with this constitutional mandate of a hearing on the issue of voluntariness, the Michigan Supreme Court has held that the trial judge must to determine the voluntariness of a confession in a separate hearing, outside the presence of a jury. Because that procedure was initiated by the pronouncement in People v. Walker, 132 N.W.2d 87 (Mich. 1965), such hearings have come to be known as "*Walker* hearings."

Here, petitioner argues that he is entitled to habeas relief because he was not afforded a *Walker* hearing on the admissibility of his custodial statements even though he objected to their use at trial. In Michigan, *Walker* hearings are held to determine Miranda violations as well as the voluntariness of a confession, even though Walker itself dealt only with the confession's voluntariness and was decided by the Michigan Supreme Court before the United States Supreme Court decided the Miranda case. The prevailing practice that has developed in Michigan courts has been to denominate all hearings challenging the constitutional validity of confessions – whether based on *Miranda* violations or voluntariness – as "*Walker* hearings." See, e.g., People v. Howard, 575 N.W.2d 16, 23 (Mich. Ct. App. 1997) (noting that the defendant's *Miranda* issue raised on appeal was abandoned because he "failed to pursue the

issue at the *Walker* hearing that was conducted in this matter"); <u>People v. Gould</u>, 233 N.W.2d 109, 113 (Mich. Ct. App. 1975) (noting that "[t]he sole question raised and litigated by defendant at the *Walker* hearing in the lower court was whether he had been given his *Miranda* warnings before or after he made the statements at issue"); <u>People v. Hopper</u>, 175 N.W.2d 889, 890 (Mich. Ct. App. 1970) (holding, where the evidence did not demonstrate that *Miranda* warnings were given, that the case would be "remand[ed] for a *Walker* hearing on the question of whether there was a voluntary waiver of right to counsel after being fully informed of his right to have such counsel present at questioning in line with <u>Miranda v. Arizona</u> ").

As the basis for his objection at trial to the use of petitioner's custodial statements, petitioner's trial counsel relied solely on what he argued was the failure of police to give the *Miranda* warnings until the conclusion of the interview.  Transcript of Jury Trial, Vol. I (docket no. 40) at 180.  Petitioner's trial counsel did not contend, as part of his objection, that petitioner's statements had been the product of police coercion.  During his objection, petitioner's counsel mistakenly referred to a *Walker* hearing having been held, <u>id</u>., and Judge Simon, the visiting judge presiding over the trial, overruled the objection based on a similarly mistaken belief that Judge Sullivan had held a *Walker* hearing and concluded that the petitioner's statements were not constitutionally infirm.[10]  <u>Id</u>. at 181.  Respondent here does not dispute that no *Walker* hearing was in fact held.  Although petitioner had filed a pre-trial motion to suppress his statements as part of his other criminal case (and his counsel was likely thinking of another pre-trial hearing held in that case on an earlier motion to suppress the fruits of a search), and in

---

[10]The court also addresses trial counsel's incorrect statement about a *Walker* hearing having been held in Part IV.C.3. of this decision below, on the issue of ineffective assistance of counsel.

that motion it was briefly asserted that petitioner's statements "were made against his will[,]" Motion to Suppress Statements and Remotion to Suppress Evidence in <u>People v. Brian Harvey and Sharrhae Johnson</u>, Nos. 97-12535-FH and 97-12531-FH (filed as part of docket no. 44), ¶ 6, no such motion was ever filed as part of the case on the charges currently at issue on the petition.

Although a *Walker* hearing was not held and the trial court judge did not make any specific factual findings concerning petitioner's allegation of coercion, by ruling that petitioner's statements were voluntary, the Michigan Court of Appeals implicitly found that police used no coercion to induce an incriminating statement from petitioner. This finding is entitled to the presumption of correctness, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); <u>Baze</u>, 371 F.3d at 318; <u>Bailey v. Mitchell</u>, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts as well as the trial court. <u>See</u> <u>Sumner v. Mata</u>, 449 U.S. 539, 546 (1981) (federal law establishing presumption of correctness "makes no distinction between the factual determinations of a state trial court and those of a state appellate court"); <u>see also</u> <u>Smith v. Jago</u>, 888 F.2d 399, 407 (6th Cir. 1989) (credibility findings made by state court of appeals were findings of fact subject to severely restricted review). Because petitioner has failed to present clear and convincing evidence to rebut this presumption, he is not entitled to challenge the appellate court's determination concerning the voluntariness of his confession on habeas review.

In any event, petitioner has failed to show that the appellate court's determination that his statements were voluntarily made was unreasonable. Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if

21

the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented.  See Harris v. Stovall, 212 F.3d 940, 943 (6th Cir. 2000).  Where, as here, the state court actually considered the issue but simply failed to fully articulate its reasoning, the review is not de novo. Onifer v. Tyszkiewicz, 255 F.3d 313, 316 (6th Cir. 2001). The review remains deferential. Harris, 212 F.3d at 943.

Here, although petitioner was not afforded a *Walker* hearing before trial and both his counsel and the trial judge mistakenly believed that petitioner's statements had been ruled admissible, petitioner's counsel still had the opportunity during the trial to explore the circumstances surrounding petitioner's custody and his statements.  See Lego v. Twomey, 404 U.S. 477, 485-486 (1971) ("A defendant has been as free since [Jackson v. Denno] as he was before to familiarize a jury with circumstances that attend the taking of his confession, including facts bearing upon its weight and voluntariness"); People v. Gilbert, 222 N.W.2d 305, 307 (Mich. Ct. App. 1974) (determination that defendant's confession is admissible "merely placed the confession on an equal footing with all other properly admitted evidence. Defendant is as free as he was before the *Walker* hearing to familiarize the jury with the circumstances that attended the taking of his confession, including facts bearing on voluntariness, to impeach its credibility or to challenge the fact that it was ever given at all").  In addition, petitioner was afforded a hearing on the issue by the Michigan Court of Appeals, which addressed petitioner's claim that his statements were not voluntary and expressly rejected it.   This decision was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

22

Petitioner's only complaint of coercion consists of his contention that his handcuffs were uncomfortable. Police promptly corrected this situation by re-cuffing petitioner with his hands in front of him. Although petitioner had been arrested in a police-dominated atmosphere, petitioner did not make his statements until after he had been removed from this atmosphere and was sitting in a police car outside the police station, presumably in public view. As the Michigan Court of Appeals also correctly observed, there was evidence that petitioner was advised of his *Miranda* rights but nonetheless voluntarily agreed to speak to police. The police made no threats, and by all indications petitioner's discussion with police was brief. Moreover, the record shows that when petitioner eventually requested an attorney, the questioning ceased. Further, petitioner does not claim to have been under the influence of any mind-altering substances or otherwise incapable of understanding his rights.

Petitioner has failed to offer any evidence that would rebut the finding of the state appellate court that his statements were voluntarily made. Given the record in this case, he could not possibly do so. The state court's decision was not unreasonable on the issue of voluntariness. Therefore, petitioner's claim based on the use of his custodial statements against him at trial does not warrant habeas relief.

**C.  Ineffective Assistance of Counsel**

Petitioner claims that his trial counsel rendered constitutionally ineffective assistance in a number of respects. First, he contends that trial counsel failed to properly impeach the testimony of investigating police officer Josh Cornell on cross-examination, after having informed the jury during opening statements that he would do so. Second, petitioner contends that trial counsel

failed to present evidence which would create an inference that the drugs found in the street had been planted.  Third, petitioner contends that trial counsel failed to obtain a *Walker* hearing on the admissibility of petitioner's incriminating statements.  Finally, petitioner contends that trial counsel improperly informed the jury about petitioner's criminal history, even though petitioner had no plans to testify.

The Michigan Court of Appeals considered petitioner's claim of ineffective assistance of counsel but rejected it.  That court's determination on the claim reads as follows:

> Next, defendant claims that he was denied his constitutional right to the effective assistance of counsel.  Because defendant did not raise this issue in a motion for a new trial or an evidentiary hearing, appellate review is precluded unless the alleged deficiencies in representation are sufficiently detailed in the existing record to allow this Court to reach and decide the claims. . . .  Although we agree that defense counsel's performance fell below an objective standard of reasonableness when he made certain allegations during his opening statements but failed to substantiate the allegations at trial, and that counsel's conduct cannot be explained or excused as trial strategy, . . . after having carefully reviewed the record, we conclude that defendant has failed to show that there is a reasonable probability that, but for the alleged deficiencies, the outcome of trial would have been different or that he was denied his right to a fair trial.

People v. Harvey, No. 219250, 2000 WL 33415218, *2 (Mich. Ct. App.  Aug. 1, 2000) (citations omitted).  It therefore appears that the Michigan Court of Appeals addressed the merits of only one of petitioner's allegations of ineffective assistance, although the respondent here does not dispute that petitioner raised his allegations of ineffective assistance in his direct appeal.

To prevail on a claim of ineffective assistance of counsel, the petitioner must satisfy two requirements.  First, he must demonstrate that his counsel's performance was constitutionally deficient, i.e., that it fell below an objective standard of reasonableness.  Strickland v. Washington, 466 U.S. 668, 687-688 (1984).  To make this showing, petitioner must overcome a

"strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance [that] 'might be considered sound trial strategy.' " Id. at 689 (citation omitted).  Second, the petitioner must "affirmatively prove prejudice." Id. at 693.   This requires him to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

"[A]s a general rule, trial counsel's strategic decisions on how the trial is to be conducted are afforded great deference." Ege v. Yukins, 485 F.3d 364, 378 (6th Cir. 2007).  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

A habeas petitioner must first show that his counsel's performance was objectively unreasonable, and then – if he succeeds in such a showing, he has the burden of demonstrating prejudice.  Smith v. Robbins, 528 U.S. 259, 285 (2000).  However, the performance component need not be addressed first.  Smith, 528 U.S. at  286 n.14.  "'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed.'" Id. (quoting Strickland, 466 U.S., at 697).

With these standards in mind, the court addresses each of petitioner's individual allegations of ineffective assistance.

## 1. Opening Statement and Impeachment of Officer Cornell

Petitioner first claims that his trial counsel was ineffective for failing to effectively impeach officer Cornell, even though counsel had promised the jury that he would do so. On the one hand, "little is more damaging than to fail to produce important evidence that had been promised in an opening." Anderson v. Butler, 858 F.2d 16, 17 (1st Cir.1988). On the other hand, "[a]n attorney's failure to fulfill promises made in opening statement is not often a successful basis for an ineffective assistance claim." Hampton v. Leibach, 290 F.Supp.2d 905, 928 (N.D. Ill. 2001), affirmed, 347 F.3d 219 (7th Cir. 2003). This is because "[t]he decision to change strategy during trial is often forced upon defense counsel by the vagaries of the courtroom arena." Id., 290 F.Supp.2d at 928.

"The failure of counsel to produce evidence which he promised the jury during his opening statement that he would produce is indeed a damaging failure sufficient of itself to support a claim of ineffectiveness of counsel." McAleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir. 1993) (citations omitted). "The rationale for holding such a failure to produce promised evidence ineffective is that when counsel primes the jury to hear a different version of the events from what he ultimately presents, one may infer that reasonable jurors would think the witnesses to which counsel referred in his opening statement were unwilling or unable to deliver the testimony he promised." Id. at 166-167. In Hampton, the attorney made two promises during his opening statement: (1) that the defendant would testify, and (2) that the evidence would show

26

that the defendant was not a gang member.  (Witnesses had identified the assailants as gang members.)[11]  Neither promise was kept.  347 F.3d at 226, 257.  On appeal, the court, citing Anderson v. Butler, held that "when the failure to present the promised testimony cannot be chalked up to unforeseeable events, the attorney's broken promise may be unreasonable[.]" 347 F.3d at 257.  Moreover, the court observed, "[t]he damage can be particularly acute when it is the defendant himself whose testimony fails to materialize."  Id.  The court held that the attorney's decision to promise the client's testimony and then to break that promise was objectively unreasonable.  Id. at 258.  The court was also critical of the attorney's failure to present promised testimony that his client was not a gang member.  See id. at 258-260. However, the court held that the breach of these promises "was not so prejudicial that it would support relief in and of itself," but merely served "to underscore the more important failure to investigate exculpatory occurrence witnesses."  Id. at 260.

Here, there is no claim that petitioner's trial counsel failed to conduct a proper investigation, nor is there any claim that trial counsel breached a promise that petitioner would testify.  Instead, the claim is that counsel, who had the facts available to him, declined to pursue the particular lines of questioning and additional witnesses petitioner believed should have been pursued.  As noted above, the Michigan Court of Appeals concluded that although defense counsel's performance "fell below an objective standard of reasonableness when he made certain allegations during his opening statements but failed to substantiate the allegations at trial,"

---

[11]Hampton, a pre-AEDPA case, involved an appeal from a district court judgment granting the defendant's petition for habeas corpus, based in part on findings from an evidentiary hearing. 347 F.3d at 229-34.   Both the defendant and his trial attorney had testified at the evidentiary hearing, developing a detailed record on the ineffective-assistance-of-counsel claim. Id.

27

petitioner had failed to show prejudice.  That conclusion is reasonable, and this court agrees with it.

To determine whether trial counsel made a promise to produce evidence that he did not fulfill, the court must turn to the text of his opening statement.  During his opening statement, petitioner's trial counsel made the following remarks:

> . . . We believe that this whole matter is a setup.  And I'll tell you what, Mr. Cornell, Detective Cornell, who is sitting at the table right now, he's going to provide us the evidence to show you that.  Detective Cornell is going to take the stand.  And I'm going to ask him, 'Did you sign up a warrant to search Mr. Harvey's home?'  And I'm going to show him his warrant.  And the warrant is going to show that Mr. Cornell told a judge that Mr. Harvey had an ounce of cocaine on the 23rd.  And Mr. Cornell is also going to testify to you that he wrote the warrant up on the 22nd, the day before.
> How did he know Mr. Harvey was going to have the dope the next day, on the 23rd?  How did he know how much to ask for the warrant that he would have?  Because this was a setup.  Because he knew that the informant asked Mr. Harvey to bring the dope, and the whole rest of this scheme is a setup, and it fell apart when Mr. Harvey didn't have it.

Transcript of Jury Trial, January 14, 1999, Vol. I (docket no. 40) at 70.

Trial counsel's opening statement therefore promised to show that petitioner's arrest was a "setup" because Cornell had written a "warrant" – including presumably an application for a search warrant – on the day before the arrest, providing information which would not have been available until the following day.[12]  During cross-examination of Cornell, counsel established

---

[12]In answer to the petition, respondent addresses his arguments on this particular issue to the validity of the misdemeanor arrest warrant issued on October 14, 1997, and not to the search warrant obtained by Cornell on October 23, 1997.  Respondent's Answer in Opposition to Petition for Writ of Habeas Corpus at 19-20.  Petitioner's trial counsel had also referred to the arrest warrant in his opening statement, arguing that "[t]he police will not show you the warrant, the valid warrant they said they had to stop him on some other charge, because Mr. Harvey had

(continued...)

that Cornell in fact knew that petitioner would be arrested on October 23, 1997 with cocaine in his possession, because Cornell had arranged for someone – presumably an informant – to schedule a drug transfer with petitioner on that date.  Id. at 155-156.

Although counsel did not specifically ask Cornell about having prepared a search warrant in advance of petitioner's arrest, counsel nonetheless established that Cornell had planned in advance to conclude an ongoing investigation of petitioner on October 23, 1997.  Therefore, trial counsel did not break a promise to produce a particular witness or document in evidence. Instead, he promised to show Cornell the search warrant and ask him about it.  As it turned out, counsel merely satisfied himself with asking Cornell about having pre-arranged petitioner's arrest on the day before it transpired – a circumstance which Cornell did not deny.  This admission by Cornell thus provided the indications of a prior "setup" which counsel had described in his opening statement.

Assuming that trial counsel failed to fulfill a specific promise he made to the jury in his opening statement to ask about the warrant, his actions did not prejudice petitioner.   The failure to present certain evidence, despite the allusion to such evidence during opening statements, does not necessarily result in a conclusion that counsel's assistance was constitutionally ineffective.  See Harrison v. Motley, 478 F.3d 750, 758-759 (6th Cir. 2007) (dismissing as without merit petitioner's argument that he was denied effective assistance of counsel due to his

---

[12](...continued)
taken care of that.  That's all subterfuge."  Transcript of Jury Trial, January 14, 1999 (docket no. 40) at 69.  Respondent appears to believe that petitioner is basing his ineffective assistance claim in part on trial counsel's failure to show that the misdemeanor arrest warrant had been "taken care of."  However, even if petitioner has previously – in state court filings – based his ineffective assistance claim in part on this particular failing, the court does not perceive petitioner to assert this as a basis for his claim in his federal petition.

attorney's failure to fulfill a promise made to the jury at opening statements that he would provide an alibi defense).  Here, in view of the fact that the search warrant had been executed and resulted in the seizure of evidence highly damaging to petitioner as well as additional serious charges, it would have been be unwise for trial counsel to elicit testimony about the warrant, thus possibly opening the door to the jury hearing evidence regarding additional pending and arguably much more serious similar criminal charges against petitioner (at worst), or to the jury wondering what additional evidence had been procured during the search (at best).   Viewed in the context of the entire defense, which was that police had "setup" an innocent person, trial counsel's ultimate decision to avoid any testimony regarding the search warrant cannot be said to have satisfied the prejudice requirement of <u>Strickland</u>.

### 2.  <u>Evidence that the cocaine was planted</u>

In supplemental briefing in support of the petition, petitioner also raises the additional argument that his trial counsel was ineffective in failing to discredit the prosecution's case in another respect.  Specifically, he argues that his counsel should have called additional police officers to testify regarding where the cocaine was found.  According to petitioner, this additional testimony would show that there were at least four different police versions of the precise location where the cocaine was located in the street, thus supporting the inference that the cocaine had been planted.[13]

---

[13]In supplemental briefs which he has filed in support of ineffective assistance claim, petitioner also focuses heavily on his trial counsel's failure to rely on evidence related to the obtaining and execution of the search warrant in order to impeach Cornell's testimony regarding the timing of certain events.  This evidence consists largely of documents or prior testimony

(continued...)

Petitioner appears to have raised a version of this argument for the first time in his *pro se* brief filed in his direct appeal.  For this reason, any facts which could conceivably support his position have not been developed, and at this stage, they are not going to be.  See  Schriro v. Landrigan, 127 S.Ct. 1933, 1939 n.1 (2007) (federal law "generally prohibits federal habeas courts from granting evidentiary hearings when applicants have failed to develop the factual bases for their claims in state courts") (citing 28 U.S.C. § 2254(e)(2)).  In any event, there is no reason to gather evidence regarding why trial counsel made a choice not to present the testimony of multiple police officers regarding the finding of the cocaine in the street, for petitioner's allegations of ineffective assistance in this regard simply fail to demonstrate that he has suffered prejudice as required by Strickland.

At trial, the prosecution presented the testimony of police officer Michael LaFave, who stated that he saw petitioner throw something out of his car.  Transcript of Jury Trial, January 14, 1999, Vol. I (docket no. 40) at 93.  Petitioner's counsel was able to elicit on cross-examination of LaFave that the officer "forgot" to include any mention in his police report of having seen petitioner drop something out of his vehicle.  Id. at 100-101.  The prosecution also presented the testimony of police officers Daniel Mills and Eric Payne that white powder was found in the street after petitioner fled.  Mills testified that he saw the powder "in the roadway just west of the centerline on Madison north of Alger," id. at 113.  Mills took a picture to show where it was

---

[13](...continued)
pertaining to the other criminal charges against petitioner.  However, assuming that petitioner did not procedurally default this particular claim, the court rejects it.  Any evidence related to these other serious charges pending against petitioner would have been highly prejudicial to petitioner's defense on the current charges.  Under the circumstances, trial counsel was wise to avoid opening this particular Pandora's box regarding the additional charges.

located.  Id. at 113-114.  Payne testified that he saw the powder "north of Alger," near the intersection of Alger and Madison.  Id. at 136-138.

Petitioner argues that another officer named Wu, who did not testify at trial, prepared a report indicating that the cocaine was found in the intersection at Alger and Madison streets.  Petition, Appendix M.   Petitioner also argues that he has previously seen a police report prepared by LaFave – presumably a different one – stating that petitioner had discarded crack cocaine, not powder, and that the crack was discarded by petitioner during the initial stop of his vehicle.  Petitioner further contends that the search warrant affidavit which Cornell had executed stated that the cocaine was seized from his person, id., Appendix J, meaning that it couldn't have been located in the street.  Petitioner assesses that his chances of being acquitted would have been increased if trial counsel had presented evidence pointing out the discrepancies between the various versions of events as reported by all of the officers involved in the circumstances surrounding his arrest.  According to petitioner, these inconsistencies would have been more likely to cause jurors to believe that the cocaine had been planted.

What petitioner fails to grasp is that his counsel was in a difficult position, from the standpoint that petitioner had been under investigation at the time he fled his arrest.  Because there is no question that petitioner fled, he appeared guilty of something; otherwise, why run?  In addition, because petitioner faced additional drug charges, his counsel walked a fine line between pointing out inconsistencies in this case and possibly opening the door to evidence – such as the search warrant affidavit – which would expose the additional charges against his client.  Finally, counsel can hardly be faulted for failing to present additional, cumulative evidence from police officers regarding the finding of drugs after petitioner's flight.  Although

counsel could have believed – as petitioner so confidently does – that he could succeed in creating the inference that the drugs were planted, counsel could also have feared that jurors would find any inconsistencies in the police officers' stories to be insignificant, thus making them more likely to convict; instead of creating doubt, this additional evidence could have served merely to highlight the existence of a wealth of similar versions of events implicating petitioner as a drug dealer.

Once again, to prevail on his claim of ineffective assistance, petitioner must show that his counsel's conduct fell beyond the wide range of assistance that might be considered sound trial strategy. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. Here, trial counsel's decision not to fully explore particular inconsistencies in the reports of various police officers appears to be a reasonable strategic one. "It is not . . . always the best trial strategy to exploit every inconsistency in the statements of a witness, even a witness called by opposing counsel." Cannon v. Mullin, 383 F.3d 1152, 1164 (10th Cir. 2004). In sum, this particular claim fails because petitioner cannot show that his counsel's performance in this regard fell below an objective standard of reasonableness.

### 3. Failure to obtain a *Walker* hearing

Petitioner next claims that his trial counsel was ineffective for failing to obtain a *Walker* hearing to challenge the admissibility of petitioner's statements to police. The record reveals that counsel for petitioner – a previous attorney, not trial counsel – filed a motion in the other criminal case against petitioner and Sharrhae Johnson, seeking to suppress the statements petitioner made to police after his arrest on October 23, 1997. Motion to Suppress Statements

33

and Remotion to Suppress Evidence in Kent County Circuit Court cases 97-12535-FH and 97-12531-FH (filed as part of docket no. 44).  Although the motion filed in that case requested that a *Walker* hearing be held to determine admissibility, no hearing on the motion was apparently ever held.  Moreover, no pre-trial motion to suppress petitioner's statements was apparently ever filed in the present case, although – as noted above – petitioner's trial counsel objected to the use of the statements during the trial.  However, as also noted in Part IV.B. above, during trial both petitioner's counsel and the visiting trial judge expressed the erroneous belief that a *Walker* hearing had been held in the case.

This particular claim fails because even assuming that trial counsel performed ineffectively by failing to request a *Walker* hearing, his actions did not prejudice petitioner.   For the reasons which the court has already articulated in Part IV.B. above, a motion to suppress would have been meritless.  "Trial counsel's failure to bring a meritless suppression motion cannot constitute ineffective assistance."  United States v. Tisdale, 195 F.3d 70, 73-74 (2d Cir.1999).

Moreover, as noted above, petitioner's counsel still had the opportunity during both the trial and appeal process to explore the circumstances surrounding petitioner's custody and his statements.  The Michigan Court of Appeals reasonably rejected petitioner's argument that his statements had not been voluntary.  Under the circumstances, trial counsel's failure to request a *Walker* hearing simply did not prejudice petitioner.

## 4.  Petitioner's criminal history

Petitioner's final claim of ineffective assistance is based on his argument that his trial

34

counsel should not have informed the jury that petitioner had a criminal record which included a

prior history with drugs.  Specifically, during opening statements petitioner's counsel made the

following remarks:

> Let me be honest with you.  Mr. Harvey has a prior record, and that prior record has dealt with drugs.  Mr. Harvey has gone to jail.  He has done his time, and he was out on parole at the time of this occurrence.  He had done his time, served the time for what he did wrong.
>
> The police, on the other hand, did not believe that Mr. Harvey was free of this type of trafficking.  Therefore, they set up a – they set up a trap for him.  They had one of Mr. Harvey's friends call him, apparently a snitch, perhaps somebody who is currently involved in drug trafficking. . . . they had him call Mr. Harvey as a friend and ask him to deliver one ounce of cocaine; not a half ounce, one ounce.
>
> Mr. Harvey declined to do so.  But the two were friends, so he agreed to come by to visit the guy.  So he's driving by, and he's on his way to visit his buddy.  And that's when the police stop him.
>
> The route that Mr. Harvey was taking was the most direct route that Mr. Harvey was going from his parole officer to his friend.  That's why the police knew he'd be there.  They knew what time his parole officer was going to have her appointment, and they knew the approximate time he'd leave. . . .

Transcript of Jury Trial, January 14, 1999, Vol. I (docket no. 40) at 68-69.  While cross-

examining officer Cornell at trial, petitioner's trial counsel asked Cornell the following

questions:

> Q:     Were you aware of Mr. Harvey's criminal record prior to the date of this arrest?
> A:     Yes.
> Q:     And you were aware that his prior conviction was not for delivery of cocaine, weren't you, for possession?
> A:     Which conviction?
> Q:     The one for which he was on parole.  Or any of them.
> A:     I would have to look over the convictions.

Id. at 161.

Petitioner assesses that the only reason counsel would have had for exposing petitioner's criminal history would have been a decision by petitioner to testify, and petitioner argues that because counsel knew that petitioner did not plan to testify, there was no reason to inform the jury about his record.  However, in order to evaluate counsel's actions, the court must place them in context.  See Wiggins v. Smith, 539 U.S. 510, 523 (2003) (in assessing counsel's performance, " we must conduct an objective review of their performance, measured for 'reasonableness under prevailing professional norms,'. . .  which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time'") (citations omitted).  Petitioner's defense – at least to the cocaine possession charge – appears to have always been and continues to be that he was a victim of a "setup," that cocaine was planted at the scene of his arrest, and that he never made any statements admitting his guilt.  Given this defense, trial counsel followed a reasonable strategy to try to imply that police were aware of petitioner's history and therefore sought to frame him.  Mentioning petitioner's being on parole and meeting with his parole officer before his arrest also permitted trial counsel to develop the defense theory that police had been following petitioner's whereabouts that day, with a plan to make an arrest.

This was not a situation where defense counsel failed to object to a prosecution attempt to use a prior conviction against the defendant in order to show character or predisposition. Instead, by deliberately drawing attention to petitioner's criminal record during opening statements, his counsel clearly made a strategic decision to use this information to his client's advantage by suggesting that this would provide a motive for police to "setup" petitioner.  "[A]s a general rule, trial counsel's strategic decisions on how the trial is to be conducted are afforded

great deference." <u>Ege</u>, 485 F.3d at 378 (citing <u>Strickland</u>, 466 U.S. at 689).  Here, it is quite evident that it was the strategy of petitioner's trial counsel to admit his client's prior involvement with drugs in order to support the defense's own theory of the case.  That the strategy did not work is a matter of hindsight, which this federal court must make every effort to avoid.  <u>See</u> <u>Strickland</u>, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time"); <u>see</u> <u>also</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight").

It is the petitioner who must overcome the presumption that, under the circumstances, counsel's challenged action might be considered sound trial strategy.  <u>Strickland</u>, 466 U.S. at 689.  Here, the petitioner has not overcome the presumption that his counsel made a sound tactical decision to expose the existence of petitioner's criminal past.  It is clear that his counsel could have reasonably believed that information about petitioner's criminal record was needed to credibly depict him as having been unfairly targeted by police.  Under the circumstances, the court cannot say that the action of petitioner's trial counsel was unreasonable or ineffective.


**D.  <u>Sentencing</u>**

Petitioner lastly claims that his federal constitutional rights were violated because he was not sentenced by the visiting judge who presided over his trial, but was instead sentenced by a different judge.  Petitioner also claims, incidentally, that the judge who sentenced him improperly computed his sentence under Michigan's sentencing guidelines.  However, these

claims are without merit because they are not cognizable upon federal habeas review.

Initially, the court notes that petitioner's claim that his federal constitutional rights were violated because he was not sentenced by the trial judge fails because it is procedurally defaulted. Although petitioner contended in his direct appeal that his sentence by Judge Sullivan was improper, he did not assert that this rose to the level of a federal constitutional violation. Moreover, although petitioner once again raised the issue of his sentencing in his post-conviction proceedings, his only constitutional claim with respect to his sentencing consisted of a brief reference to "due process" in objecting to the facts allegedly relied upon by Judge Sullivan during sentencing.[14] Petitioner did not assert that the fact of being sentenced by Judge Sullivan rather than by Judge Simon violated his federal constitutional due process rights. Under the circumstances, plaintiff is now prevented from raising this claim for the first time on federal habeas review. See generally Duncan v. Henry, 513 U.S. 364, 365-366 ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that [a state court ruling] denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court").

As noted above, even if this particular federal constitutional claim were not procedurally defaulted, it is without merit. Petitioner advances no reason why it rises to the level of a federal constitutional violation for him to be sentenced by a judge who did not preside over his trial.

---

[14]This reference was made by petitioner in his application for leave to appeal the denial of post-conviction relief, filed in the Michigan Supreme Court (part of docket no. 46).

Although the Michigan Court of Appeals initially remanded petitioner's case back to the Kent County Circuit Court with the direction that he be re-sentenced by Judge Simon if that judge was "reasonable available," the Michigan Court of Appeals did not address any federal constitutional claim, but rather based its holding on Michigan law.  However, even if one assumes that Judge Sullivan failed to properly comply with the appellate court's directive, this would not provide a basis for granting the petition.   Even where a state-mandated sentencing procedure is violated, "a federal court may not issue [a writ of habeas corpus] on the basis of a perceived error of state law." Pulley v. Harris, 465 U.S. 37, 41 (1984).

"[F]ederal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  In reviewing a petition for a writ of habeas corpus, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Baze, 371 F.3d at 322.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Federal courts "cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question." Gryger v. Burke, 334 U.S. 728, 731 (1948).  In sum, whether the sentencing judge complied with state requirements involves interpretation of state law, a matter outside federal habeas review.

With respect to petitioner's claim that his sentence was improperly computed under the applicable state sentencing guidelines, once again, errors of state law are generally not reviewable in a federal habeas proceeding.  Although the Supreme Court has "sustained due process objections to sentences imposed on the basis of 'misinformation of constitutional

magnitude[,]'" <u>Roberts v. United States</u>, 445 U.S. 552, 556 (1980) (citations omitted), the alleged errors identified by petitioner in this case are not of that magnitude. Here, petitioner has merely asserted that Judge Sullivan relied on "false information" that petitioner had a prior conviction for delivery of cocaine. Petition, Ground IV (Sentencing) at 1. However, petitioner concedes that his criminal history did in fact include two "drug felonies." <u>Id</u>. at 2. Therefore, even assuming that Judge Sullivan relied on sentencing information which was somewhat inaccurate, that information was not materially false in the constitutional sense. Petitioner does not contend that he had no prior drug convictions or that his prior convictions were constitutionally invalid. <u>See</u> <u>United States v. Tucker</u>, 404 U.S. 443, 447 (1972) (case was properly remanded for resentencing where two convictions relied upon by trial judge in imposing sentence were unconstitutional because defendant lacked counsel); <u>see</u> <u>also</u> <u>Townsend v. Burke</u>, 334 U.S. 736, 740-741 (1948) (due process was violated where sentencing court relied in part on charges for which petitioner was found not guilty). Here, because any alleged error was not of constitutional magnitude, petitioner was not denied due process of law in his sentencing.

**V**

**Conclusion**

For the reasons stated, the petition is DENIED.

So ordered this 8th day of August, 2008.

 /s/ Wendell A. Miles
Wendell A. Miles, Senior Judge